[Cite as *In re Adoption of L.K.P.*, 2024-Ohio-2551.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
GREENE COUNTY

IN THE MATTER OF THE ADOPTION
OF: L.K.P.

:
:
:    C.A. No. 2024-CA-4
:
:    Trial Court Case No. 11437AD
:
:    (Appeal from Common Pleas Court-
:    Probate Division)
:
:

. . . . . . . . . . .

O P I N I O N

Rendered on July 3, 2024

. . . . . . . . . . .

WILMER J. DECHANT, JR., Attorney for Appellant

WILLIAM R. MILLER, Attorney for Appellee

. . . . . . . . . . . .

EPLEY, P.J.

{¶ 1} Appellant-Stepfather appeals from a judgment of the Greene County Probate Court which held that the consent of L.K.P.'s biological father (Father) was needed for the proposed stepparent adoption. For the reasons that follow, the judgment of the trial court will be affirmed.

## I.    Facts and Procedural History

{¶ 2} Mother and Father were married in 2010 and had one child together, L.K.P., in September 2011. Shortly after their separation, Mother began a relationship with Stepfather. Their union has resulted in four children, and L.K.P. has lived with Stepfather since 2016. Stepfather considers L.K.P. as his daughter.

{¶ 3} On November 17, 2020, Mother and Father divorced. The divorce decree granted Mother custody of L.K.P. and granted Father the court's standard order of parenting time. The decree also obligated Father to pay $80 per month in child support and an additional $16.20 per month for medical support. Since the divorce, Father has not exercised his court-ordered parenting time and has not paid child support.

{¶ 4} Mother and Stepfather were married on June 6, 2023, and three days later, on June 9, Stepfather filed his petition to adopt L.K.P. Mother consented to the adoption, but Father did not. In his petition, Stepfather alleged that Father's consent was not required because Father had failed without justifiable cause to have more than de minimis contact with L.K.P. for the one year prior to the filing of the petition and because Father had failed without justifiable cause to provide for the maintenance and support of the child during that same one-year period.

{¶ 5} Father filed an objection to the adoption and, on December 12, 2023, the case proceeded to a hearing on the sole issue of whether Father's consent was required. At the proceeding, the probate court heard testimony from Father, Stepfather, Mother, and Maternal Grandmother. It also considered dozens of exhibits, including the divorce decree, financial and medical records, and a plethora of text messages. Ultimately, the court concluded that Father's consent was necessary, and because he would not consent

to the adoption, the petition was dismissed.

{¶ 6} Stepfather has appealed, raising a single assignment of error.

**II.     Parental Consent**

{¶ 7} In his assignment of error, Stepfather argues that the trial court erred when it found that Father's consent for the adoption was necessary. He makes two arguments: (1) the court erroneously found Father had justifiable cause for his lack of maintenance and support of L.K.P., and (2) it mistakenly ruled Father had more than de minimis contact with the child. We will address the issue of contact first.

Contact with L.K.P.

{¶ 8} It has been well established that a parent has a fundamental right to care for and have custody of his or her child and that those rights are terminated when a child is adopted. *In re of Adoption of M.M.R.*, 2d Dist. Champaign No. 2017-CA-12, 2017-Ohio-7222, ¶ 5. However, R.C. 3107.07(A) provides that consent to adoption is not required of a parent of a minor child "when it is alleged in the adoption petition and the court, after proper service of notice and hearing, finds by clear and convincing evidence that the parent has failed without justifiable cause to provide more than de minimis contact with the minor or to provide for the maintenance and support of the minor * * * for a period of at least one year immediately preceding * * * the filing of the adoption[.]"

{¶ 9} While some of our sister Districts use a three-step analysis (*see In re Adoption of M.T.R.*, 5th Dist. Licking No. 2022 CA 00010, 2022-Ohio-2473; *In re Adoption of D.W.-E.H.*, 8th Dist. Cuyahoga No. 110705, 2022-Ohio-528; *In re Petition for Adoption of Z.H.*, 2022-Ohio-3926, 199 N.E.3d 1092 (6th Dist.)), this Court has determined that the

probate court should use a two-step process when applying the contact prong of R.C. 3107.07(A). *In re Adoption of J.R.I.,* 2d Dist. Greene No. 2022-CA-22, 2023-Ohio-475. First, it must decide whether the parent has failed to have more than de minimis contact. *In re Adoption of M.M.R.* at ¶ 7.

{¶ 10} Though not defined by statute, "more than de minimis contact" implies contact – either attempted or successful – beyond a single occurrence. *In re Adoption of T.U.*, 2020-Ohio-841, 152 N.E.3d 943, ¶ 25 (6th Dist.). That is, it demands " 'more quality and quantity' and requires 'more effort from the parent to have contact and communication with the child' than is shown by a one-time contact." *Id.*, quoting *In re Adoption of K.A.H.,* 10th Dist. Franklin No. 14AP-831, 2015-Ohio-1971, ¶ 10. Black's Law Dictionary describes de minimis as "trifling; negligible." *Black's Law Dictionary* (11th ed. 2019).

{¶ 11} Probate courts have much discretion over the factual determinations – like whether there has been more than de minimis contact – which will not be disturbed absent an abuse of discretion. *In re Adoption of M.B.,* 131 Ohio St.3d 186, 2012-Ohio-236, 963 N.E.2d 142, ¶ 21-23; *In re Adoption of J.R.H.*, 2d Dist. Clark No. 2013-CA-29, 2013-Ohio-3385, ¶ 25-28. To constitute an abuse of discretion, a trial court's action must be arbitrary, unreasonable, or unconscionable. *Ojalvo v. Bd. of Trustees of Ohio State Univ.*, 12 Ohio St.3d 230, 232, 466 N.E.2d 875 (1984).

{¶ 12} If the probate court determines that the parent had de minimis contact (or less), the next step is to "determine whether justifiable cause for the failure has been proven by clear and convincing evidence." *In re Adoption of M.M.R.* at ¶ 8. The question

of whether justifiable cause has been proven will not be disturbed on appeal unless the determination is against the manifest weight of the evidence. *In re Adoption of Masa*, 23 Ohio St.3d 163, 492 N.E.2d 140 (1986), paragraph two of the syllabus. " 'In determining whether a judgment is against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice" that there must be a reversal of the judgment and an order for a new trial.' " *In re Adoption of B.A.H.*, 2d Dist. Greene No. 2012-CA-44, 2012-Ohio-4441, ¶ 21, quoting *Steagall v. Crossman*, 2d Dist. Montgomery No. 20306, 2004-Ohio-4691, ¶ 29.

{¶ 13} In this case, it is undisputed that although Father did not have *much* contact with L.K.P. in the year prior to the filing of the adoption petition, he did have *some*. For example, on September 11, 2022, L.K.P. went to Marion's Piazza for lunch with Father and her paternal grandmother, and on March 18, 2023, Father took her to the Mall at Fairfield Commons, where he bought her some toys and candy. Trial Tr. at 19, 28, 46-47, 80-81, 97-98, 145. There is also agreement from the parties that Father and daughter spoke on the phone on several occasions during the one-year period before filing. Trial Tr. at 16, 31, 39, 102-103. In fact, Father presented evidence at trial that he had eight calls with L.K.P. between March 8 and April 8, 2023. Exhibit E.

{¶ 14} There was also evidence presented at trial that Father, upon learning that L.K.P. had a cell phone of her own, asked Mother on *numerous* occasions to give him the number so he could contact his daughter directly. Mother repeatedly denied the request.

Trial Tr. at 49-50, 67, 77-78, 86; Exhibits D1-D14.

{¶ 15} Based on the record before us, we cannot say that the trial court abused its discretion when it found that Father had more than de minimis contact with L.K.P. during the relevant time period. Several phone calls and two face-to-face meetings in one year is not much parental contact, but it is more than de minimis contact. Having come to this conclusion, it is unnecessary to analyze whether there was justifiable cause for limited contact.

<u>Maintenance and Support</u>

{¶ 16} As to whether a parent has failed to provide for the support and maintenance of a child, the court must use a three-step process. First, it must determine what the law or judicial decree required of the parent during the year preceding the filing of the adoption petition. *In re Adoption of A.K.*, 168 Ohio St.3d 225, 2022-Ohio-350, 198 N.E.3d 47, ¶ 14. This makes sense because "[i]n order to determine whether a parent complied with the maintenance and support prong, the court necessarily needs to know the parent's obligation as required by law or judicial decree for the year prior to the filing of the petition." *In re Adoption of J.R.I.*, 2023-Ohio-475, 209 N.E.3d 93, ¶ 31. This preliminary step must be resolved before deciding whether the parent has failed to maintain and support the child. *Id.* at ¶ 18. Next, the court must decide if the parent met his or her obligation under the law or judicial decree. *In re Adoption of A.K.* at ¶ 14, citing *In re Adoption of B.I.* 157 Ohio St.3d 29, 2019-Ohio-2450, 131 N.E.3d 28, ¶ 15. Finally, if the obligation was not met, the court must determine whether there was a justifiable cause for that failure. *Id.*

{¶ 17} Neither party disputes that there was a judicial decree in place ordering Father to pay child support and that he had not paid anything toward that obligation. Thus, the determining factor was whether Father had justifiable cause for that failure.

{¶ 18} The court heard testimony from multiple witnesses that Father suffers from a variety of diagnosed physical and mental ailments. Stepfather testified that he had known Father for 20 years and knew that he had health problems, especially with migraines and nausea. Similarly, both Mother and Maternal Grandmother told the court that they were aware of Father's struggles with migraines and anxiety.

{¶ 19} Father testified that it was not just migraines he suffered from, but a whole host of other medical conditions. According to the record, he had been diagnosed with esophageal reflux, depressive disorder, generalized anxiety disorder, hematuria, iron deficiency, allergic rhinitis, lumbago, mixed hyperlipidemia, systolic murmur, chronic headaches, thalassemia, fibromyalgia, irritable bowel syndrome, atrophic gastritis, Barrett's esophagitis, gastritis, and chronic anemia. Trial Tr. at 110-111; Exhibit M. Father stated that those issues manifest in nausea, vomiting, diarrhea, headaches (both tension and migraine), and generalized muscle pain. He informed the court that due to these issues it was very difficult to function on a daily basis, and he noted that even getting dressed in the morning was challenging. As a result, he lived in his parents' basement and depended on his mother and girlfriend to take care of his financial needs. Father had not worked since 2018, and he applied for Social Security disability benefits in April 2023.

{¶ 20} The Ohio Supreme Court has stated that the "ability to pay is a key factor in determining whether there is justifiable cause for failure to support a child." *In re Adoption*

*of Masa*, 23 Ohio St.3d 163, 167, 492 N.E.2d 140, 143 (1986). In this case, the evidence points to the fact that Father did not provide for the maintenance and support of L.K.P. because he could not do so. His vast array of medical diagnoses made him unable to work, unable to support himself, and unable to support his daughter. We agree with the trial court that Stepfather did not meet his burden of proving by clear and convincing evidence that Father lacked justifiable cause for failing to support L.K.P.

**{¶ 21}** We conclude that the trial court did not err in finding that Stepfather did not meet his burden of proof that Father had failed without justifiable cause to provide more than de minimis contact with L.K.P. or failed without justifiable cause to provide maintenance and support for her during the one-year period immediately preceding the filing of the adoption petition. The assignment of error is overruled.

### III.      Conclusion

**{¶ 22}** The judgment of the trial court will be affirmed.

. . . . . . . . . . . . .


WELBAUM, J. and LEWIS, J., concur.